**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL NO. 3:24-CR-00227 |
| PAUL RAYMOND ROSS, | (MEHALCHICK, J.) |
| Defendant. | |

**MEMORANDUM**

Pending before the Court is Defendant Paul Raymond Ross's ("Ross") motion to dismiss indictment and quash arrest. (Doc. 30). For the following reasons, Ross's motion is denied. (Doc. 30).

I.    **FACTUAL BACKGROUND**

Ross currently resides in the Philippines. (Doc. 31, at 1-2; Doc. 34, at 4-5). On April 18, 2008, Ross pled guilty in the United States District Court for the Northern District of New York to attempting to extort an individual known as "K.D." for $20,000 through threating communications. (Doc. 1, ¶¶ 3-4). In 2013, the government charged Ross in the Northern District of New York with internet stalking for allegedly stalking K.D. (Doc. 1, ¶¶ 5-6). Ross later pled guilty to this charge and admitted that "he stalked K.D. in violation of federal law and that he engaged in these actions intending to financially damage K.D. and cause K.D. emotional distress." (Doc. 1, ¶ 6). The government alleges that between June 4, 2022, and August 13, 2024, Ross posted threatening photographs, slogans, and statements about K.D. on the internet in an effort to retaliate against her for communicating with law enforcement. (Doc. 1, ¶ 8). The government also alleges that during this time, Ross attempted to extort K.D. through the "wrongful use of fear including fear of economic loss." (Doc. 1, ¶ 10). On August 28, 2024, the government indicted Ross based on charges of unlawful retaliation and

extortion. (Doc. 1). Ross has not yet been arraigned because he is currently in the Philippines. (Doc. 31, at 2; Doc. 34, at 4-5).

On November 17, 2025, Ross filed a motion to dismiss indictment and quash arrest warrant along with a brief in support.[1] (Doc. 30; Doc. 31). On December 22, 2025, the government filed a brief in opposition. (Doc. 34). Ross did not file a timely reply brief. Accordingly, this matter is now ripe and ready for disposition.

## II.    STANDARD OF REVIEW

Rule 12(b)(2) of the Federal Rules of Criminal Procedure allows a defendant to move to dismiss an indictment for lack of jurisdiction "at any time while the case is pending." Federal district courts "have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C.A. § 3231. Courts only have jurisdiction over alleged criminal conduct committed outside of the United States where the pertinent federal criminal statute applies extraterritorially. *See United States v. Martinez-Hidalgo,* 993 F.2d 1052, 1055 (3d Cir. 1993) (evaluating whether a court has jurisdiction over alleged extraterritorial criminal conduct); *see also United States v. Brodie,* 174 F. Supp. 2d 294, 304 (E.D. Pa. 2001) (evaluating the same). A statute applies extraterritorially where either 1) the statute expressly states it applies extraterritorially, or 2) "the case involves a domestic application of the statute . . . [and] the conduct relevant to the statute's focus occurred in the United States." *RJR Nabisco v. Eur. Cmty.,* 579 U.S. 325, 336 (2016); *see In re Search Warrant No. 16-960-M-1 to Google,* 275 F. Supp. 3d 605, 611 (E.D. Pa. 2017). Like with all Rule 12 motions to dismiss indictments, the Court must assume all factual allegations listed in the indictment are true

---

[1] Ross notes that the instant motion is a counseled version of his previous *pro se* motions. (Doc. 31, at 2). Accordingly, Ross's previous *pro se* motions are **DENIED as moot**. (Doc. 10; Doc. 13).

when assessing a motion to dismiss for lack of jurisdiction. *See United States v. Stock*, 728 F.3d 287, 299 (3d Cir. 2013) (noting that Courts accept facts alleged in the indictment as true when evaluating Rule 12 motions); *see also United States v. Bissell*, 954 F. Supp. 841, 860 (D.N.J. 1996), *aff'd*, 142 F.3d 429 (3d Cir. 1998) (noting that Courts accept allegations in the indictment as true when evaluating Rule 12(b)(2) motions); *see also United States v. Muntasir*, No. CRIM.A. 12-524 DMC, 2012 WL 4955247, at *2 (D.N.J. Oct. 16, 2012) (noting the same).

## III.    DISCUSSION

Ross avers that the Court must dismiss the charges against him for lack of jurisdiction because the "indictment does not set forth sufficient domestic application or connection to interstate commerce to overcome the presumption against extraterritoriality." (Doc. 31, at 6-10). According to Ross, there is a presumption against applying criminal statutes to conduct committed outside of the United States and in order to overcome that presumption, the government must "allege a solid connection to interstate commerce." (Doc. 31, at 6-10). The government counters that Ross is charged with unlawful retaliation in violation of 18 U.S.C. §1513, which clearly states that the statute applies to conduct committed outside of the United States. (Doc. 34, at 10); *see* 18 U.S.C. § 1513(d). The government further contends that the Hobbs Act's extorsion provisions apply to Ross's extraterritorial conduct because "[a]lthough the conduct might have occurred overseas, the harm [Ross] caused was purely domestic including the psychological harm suffered by the victim, financial risk suffered by the victim and her business, and the interference with lawful activities of the business in this country." (Doc. 34, at 16).

Courts presume that federal statutes do not apply to conduct committed outside of the

3

United States. *See RJR Nabisco*, 579 U.S. at 336 (acknowledging a "presumption against extraterritoriality"). Courts apply a "two-step framework for analyzing extraterritoriality issues." *RJR Nabisco*, 579 U.S. at 336; *see also Google*, 275 F. Supp. 3d at 611. First, courts must assess "whether the [relevant] statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 579 U.S. at 336. "If so, then the statute applies extraterritorially, subject only to 'the limits Congress has (or has not) imposed on [its] foreign application.'" *Google*, 275 F. Supp. 3d at 611 (quoting *RJR Nabisco*, 579 U.S. at 336). Second, if the statute does not clearly state that it applies exterritorialy, the Court must "determine whether the case involves a domestic application of the statute, and [courts] do this by looking to the statute's 'focus.' If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco*, 579 U.S. at 337; *see Google*, 275 F. Supp. 3d at 611.

Thus, the first step of the Court's analysis is to review the relevant criminal statutes and determine if they explicitly allow for extraterritorial application. *See RJR Nabisco*, 579 U.S. at 337; *see also Google*, 275 F. Supp. 3d at 611. The government charged Ross with unlawful retaliation in violation of 18 U.S.C. §1513 and attempted extortion in violation of the Hobbs Act found at 18 U.S.C. §1951. (Doc. 1). Regarding Ross's retaliation charges, 18 U.S.C. §1513(d) unambiguously states "[t]here is extraterritorial Federal jurisdiction over an offense under this section." Accordingly, the government may prosecute Ross for alleged acts of retaliation committed outside of the United States and the Court has jurisdiction over these charges. *See RJR Nabisco*, 579 U.S. at 337 (noting that a statute applies extraterritorially where its plain language "gives a clear, affirmative indication that it applies extraterritorially"); *see also Google*, 275 F. Supp. 3d at 611 (noting the same). Ross's motion to dismiss is **DENIED**

regarding the retaliation charges. (Doc. 30).

The government concedes that the Hobbs Act's plain text does not unambiguously state that its extortion provisions apply extraterritorially. (Doc. 34, at 10). The Court must then assess whether "the case involves a domestic application of the statute . . . [and] the conduct relevant to the statute's focus occurred in the United States." *RJR Nabisco*, 579 U.S. at 337; *see Google*, 275 F. Supp. 3d at 611. While evaluating whether a proposed application of a statute is a domestic application, courts must consider the "interests [the statute] seeks to protec[t] or vindicate." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 414 (2018) (citations and internal quotations omitted). The Hobbs Act provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both

> 18 U.S.C.A. § 1951(a).

The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C.A. § 1951(b)(2). The Supreme Court has noted that "[t]he language of the Hobbs Act is unmistakably broad [and it] reaches any obstruction, delay, or other effect on commerce, even if small." *Taylor v. United States*, 579 U.S. 301, 305 (2016). Thus, the relevant interest the Hobbs Act seeks to protect or vindicate are the interests of individuals within the United States to conduct interstate commerce free from threat of "force, violence, or fear." 18 U.S.C.A. § 1951(a), (b)(2). Because of this, the Third Circuit has held that the Hobbs Act applies to acts of extortion or attempts to commit acts of extortion which occur outside of the United States so long as those acts had an effect on interstate commerce within

the United States. *United States v. Inigo*, 925 F.2d 641, 648 (3d Cir. 1991) (finding that the Hobbs Act applied to defendants who "attempt[ed] and conspire[ed] to extort" a victim even though they made the alleged extortionist threats outside of the United States); *see United States v. Botsvynyuk*, No. CRIM. 10-159-1, 2012 WL 2885928, at *10 (E.D. Pa. July 16, 2012), *aff'd*, 552 F. App'x 178 (3d Cir. 2014) (finding the same). Under the Hobbs Act, "the government need only prove a *de minimis* effect on commerce." *United States v. Urban*, 404 F.3d 754, 781 (3d Cir. 2005) (emphasis in original); *see also United States v. Manzo*, 636 F.3d 56, 61 n.4 (3d Cir. 2011). Further, allegations that a defendant's actions only had a potential effect on commerce are sufficient under the Hobbs Act. See *Urban*, 404 F.3d at 766 (noting that "the '*de minimis* effect [on commerce]' in an individual Hobbs Act case need only be '[a] potential [effect]'" (quoting *United States v. Haywood*, 363 F.3d 200, 209 (3d Cir. 2004)).

Here, the indictment alleges that K.D. resided in and conducted business in the United States at times relevant to the indictment. (Doc. 1, ¶ 2). The indictment further alleges that Ross wrongfully used fear, including fear of economic loss, to extort K.D. while she resided in and conducted business in the United States and "attempted to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion." (Doc. 1, ¶¶ 2, 10). According to the indictment, this extortion is a continuation of previous attempts to extort K.D. while she resided in and conducted business in the United States. (Doc. 1, ¶ 4). Accepting the allegations in the indictment as true, the government proposes a domestic application of the Hobbs Act because it seeks to prosecute Ross for making extortionist threats which impacted economic activity within the United States and had at least a potential *de*

*minimis* effect on commerce within the United States.[2] *See Inigo*, 925 F.2d at 648 (noting that the Hobbs Act applies to extraterritorial attempts to extort against a victim and harm their business within the United States); *see also Botsvynyuk*, 2012 WL 2885928, at *10 (noting the same); *see also Urban*, 404 F.3d at 766 (noting that an alleged Hobbs Act violation only requires the government to prove a potential *de minimis* effect on interstate commerce). Such an application of the Hobbs Act protects K.D.'s ability to engage in interstate commerce within the United States free from threat which is the interest the Hobbs Act "seeks to protec[t]." *WesternGeco LLC*, 585 U.S. at 414 (citations and internal citations omitted); *see* 18 U.S.C.A. § 1951(a), (b)(2); *see also Inigo*, 925 F.2d at 648. Accordingly, the Court retains jurisdiction and Ross's motion to dismiss is **DENIED**.[3]  (Doc. 30).

## IV.    CONCLUSION

Based on the foregoing, Ross's motion to dismiss indictment (Doc. 30) and *pro se* motions (Doc. 10; Doc. 13) are **DENIED**. An appropriate Order follows.

**Dated: June 10, 2026**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[2] Ross also states in a footnote that the Court, in the alternative, should dismiss the extortion charges due to a failure to allege an effect on interstate commerce. (Doc. 31, at 7). For the reasons discussed above, the indictment sufficiently alleges at least a *de minimis* effect on interstate commerce. *See Urban*, 404 F.3d at 781(noting that a *di minimis* effect on interstate commerce is sufficient under the Hobbs Act); *see also Manzo*, 636 F.3d at 61 n.4 (noting the same).

[3] The parties also dispute whether the Court should refuse to consider Ross's motion under the discretionary fugitive disentitlement doctrine. (Doc. 31, at 4-6; Doc. 34, at 5-9). The Court need not address this issue because Ross's motion fails on the merits. *See United States v. Westbrook*, No. 2:23-CR-00779, 2025 WL 3034055, at *2 n.14 (D.N.J. Oct. 30, 2025) (declining to address the fugitive disentitlement doctrine where a defendant's motion failed on the merits).